POOLE, Circuit Judge,
specially concurring:
I agree that the district court should not have imposed an across-the-board sealing of all documents filed and to be filed, and that such an order cannot stand in the light of United States v. Brooklier, 685 F.2d 1162 (9th Cir.1982). It is the law of this court, “until the Supreme Court [otherwise] resolves these issues,” Brooklier at 1167, that the procedural prerequisites and substantive findings set forth in Brooklier must be *1148 observed before closure of proceedings is ordered. To that rule we today have added that those procedures also apply to pretrial documents which otherwise would constitute public records.
I do not concur in the implication in the majority opinion that adverse pre-trial publicity really is not of much consequence and therefore, presumably, hardly any sealing order could be proper. Neither do I concur in the pure dictum, distilled from a selective quotation from Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1967), to the effect that “in a large metropolitan area such as Los Angeles, with its millions of potential jurors, it is unlikely that ‘searching questioning of prospective jurors * * *’ and ‘the use of emphatic and clear instructions * *’ will fail to produce an unbiased jury, regardless of the nature of the pretrial documents filed.” (Op. p. 1146). Such precatory conclusions do not comport with the real-life lessons of criminal trials or the actual experience of trial lawyers. Nor are such easy assertions bolstered by the majority’s adoption of the Second Circuit’s reassurance, in affirming one of the “Abscam” cases, United States v. Myers, 635 F.2d 945, 953 (2d Cir.1980), that the intense publicity in those controversial cases has not left unsettled doubts and grave concern that violence was done to basic concepts of fair trial.
In fact, Nebraska Press Ass’n does not at all suggest that a defendant’s constitutional right to fair trial may not be so damaged by reams of adverse publicity as to call for reversal of a conviction.
In the first place, that case did not involve sequestering of pretrial documents but concerned a blanket injunction against the press, forbidding publication of anything in the nature of an admission or confession by the defendant — a classic prior restraint. In the second place, with respect to the potential impact of publicity, Chief Justice Burger’s opinion reads:
Our review of the pretrial record persuades us that the trial judge was justified in concluding that there would be intense and pervasive pretrial publicity concerning this case. He could also reasonably conclude, based on common human experience, that publicity might impair the defendant’s right to a fair trial. He did not purport to say more, for he found only ‘a clear and present danger that pre-trial publicity could impinge upon the defendant’s right to a fair trial.’
Nebraska Press Ass’n v. Stuart, 427 U.S. at 562-563, 96 S.Ct. at 2804. (Emphasis in original).
And further in the opinion it is stated:
The record demonstrates, as the Nebraska courts held, that there was indeed a risk that pretrial news accounts, true or false, would have some adverse impact on the attitudes of those who might be called as jurors.
Id. at 568-569, 96 S.Ct. at 2807.
Also, in Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1978), Justice Blackmun, joined by Justices Brennan, White and Marshall, wrote:
At the same time, I do not deny that the publication of information learned in an open proceeding may harm irreparably, under certain circumstances, the ability of a defendant to obtain a fair trial. This is especially true in the context of a pretrial hearing, where disclosure of information, determination to be inadmissible at trial, may severely affect a defendant’s rights. Although the Sixth Amendment’s public-trial provision establishes a strong presumption in favor of open proceedings, it does not require that all proceedings be held in open court when to do so would deprive a defendant of a fair trial.
443 U.S. at 439, 99 S.Ct. at 2936. There is no doubt in the real world that pervasive adverse publicity can indeed contaminate the air for fair trial. No one can now say what persistent effect, if any, lurid publicity will have on the trial, even after months have passed. We have no occasion to dilute the teachings of history. Our function is to reason how there may be legitimate antidote against miscarriage of justice.
*1149 I am also concerned that the majority has not indicated how the trial judge should in its view go about making his “item-by-item” determination (Op. p. 1147) whether future documents, which he may have reason to believe meet the Brooklier guidelines, should be withheld. Nothing has been said about “in-camera inspection,” a common practice and precisely the procedure that the court logically should follow. The press petitioners, quite without justification, I think, have insisted that it should not be permitted. They have argued that the press has some right to immediate inspection which cannot be held in abeyance while the trial judge looks to see whether withholding is necessary to protect the fair trial right or any other right may warrant withholding.
“Although the right of access to criminal trials is of constitutional stature, it is not absolute.” Globe Newspaper Co. v. Superior Court, - U.S. -, 102 S.Ct. 2613, 2620 n. 17, 73 L.Ed.2d 248 (1982); Brennan, J. for the Court, citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581, n. 18, 100 S.Ct. 2814, 2830, n. 18, 65 L.Ed.2d 973 (plurality opinion); citing also Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683. The Globe court has made it crystal clear that neither the First Amendment nor the Sixth gives press, public or the defendant the right to look first, before the court has had an opportunity to judge the nature of questioned documents or other matter. In Globe, a rape case, the court recognized the appropriateness of in-camera procedure for sensitive issues:
Of course, for a case-by-case approach to be meaningful, representatives of the press and general public ‘must be given an opportunity to be heard on the question of their exclusion.’ * * * This does not mean, however, that for purposes of this inquiry the court cannot protect the minor victim by denying these representatives the opportunity to confront or cross-examine the victim, or by denying them access to sensitive details concerning the victim and the victim’s future testimony. Such discretion is consistent with the traditional authority of trial judges to conduct in camera conferences. (Citation omitted). Without such trial court discretion, a state’s interest in safeguarding the welfare of the minor victim determined in an individual case to merit some form of closure, would be defeated before it could ever be brought to bear.
Globe Newspaper Co., -U.S. at -, n. 25, 102 S.Ct. at 2622, n. 25.
In addition, there are numerous other alternatives to flatly closing or sealing. For example, the judge may consider partial excision of documents; may place “limitations on the right of access that resemble ‘time, place, and manner’ restrictions on protected speech,” Globe Newspaper Co., supra, 102 S.Ct., at 2620 n. 17 (1982). I believe there exists ample authority for the court to admonish the attorneys and law enforcement officials connected with the case against gratuitous public statements— in which both sides here have unfortunately engaged — calculated to distort and confuse the issues in litigation. The defense often has self interest in abstaining from such activity, and the prosecution “is in a particular and very definite sense the servant of the law * * *” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).
Any careful reading of the cases demonstrates that the right of fair trial is companion, not servant, to the constitutional guarantee of public trial. A defendant’s individual stake in it is to be protected every bit as much as that of other components of society and a district court has a duty to lend that protection, using its full panoply of available procedures. What we say today ought not be seen as disregarding the danger of adverse publicity but as reinforcing the equally important rights of public and press under the First Amendment. In short, in this area as in other aspects of the administration of justice, drawing the least restrictive line is an essential function of the judicial process.
I do not suggest that the majority has intended to denigrate the traditional discre *1150 tion of the court to apply a considered and private analysis to documents whose public availability may be challenged. I do suggest that in its setting aside of the district court’s order,- some practical requirements of trial have not been fully considered. I am confident, however, that the district judge, whose conscientious efforts we have nevertheless found wanting, will understand that we do not deny that in proper circumstances he still retains the ultimate power to close or seal, faithful to the constitutional procedures we have now underscored, where he finds and articulates that lesser alternatives are inadequate. I am also confident that under our ruling, properly construed, district judges will continue to reach for fair balance of the sometimes conflicting interests which arise in the course of assuring fair and public trial.